UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUDRY A. ACHESON,                    )
                                     )   No. CV-09-304-CI
            Plaintiff,               )
                                     )
v.                                   )   ORDER GRANTING DEFENDANT'S
                                     )   MOTION FOR SUMMARY JUDGMENT
MICHAEL J. ASTRUE,                   )   AND DENYING PLAINTIFF'S
Commissioner of Social               )   MOTION FOR SUMMARY JUDGMENT
Security,                            )
                                     )
            Defendant.               )

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 18.)  Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Richard A. Morris represents Defendant.  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 7.)  After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### JURISDICTION

Plaintiff Audry A. Acheson (Plaintiff) protectively filed for disability income benefits (DIB) and supplemental security income (SSI) on May 22, 2006. (Tr. 34, 121.)  Plaintiff alleged an onset date of June 30, 2003.  (Tr. 34.)  Benefits were denied initially and on reconsideration.  (Tr. 63, 68, 70.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Paul Gaughen on January 21, 2009.  (Tr. 32-58.)  Plaintiff was represented by counsel and testified at the hearing.  (Tr. 43-51.)  Vocational expert K. Diane Kramer and medical expert David Rullman, M.D., also testified.  (Tr. 37-42, 52-57.)  The ALJ denied benefits.

(Tr. 13-21.)   After reviewing additional evidence submitted by Plaintiff, the Appeals Council denied review.  (Tr. 1.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts and administrative record and will, therefore, only be summarized here.

At the time of the hearing, Plaintiff was 41 years old.  (Tr. 44.)  Plaintiff has a high school diploma and a vocational certificate in mechanical drafting and computer aided drafting, plus two additional semesters of college education.  (Tr. 44-45.)  She last worked in June or July of 2007.  (Tr. 46.)  Plaintiff has work experience as an educational assistant, a potter in a nursery, an office assistant and weight master for an asphalt company, a strawberry cleaner, cook helper, and home health aide.  (Tr. 52-53.)  Plaintiff testified she had nighttime seizures as a child, but did not see a doctor about them until she was 19 years old.  (Tr. 47.)  The first time she had a seizure during the day was when she was working as a cook in 2005.  (Tr. 47.)  She was fired from that job due to the seizure.  (Tr. 47.)  Plaintiff testified that in the two years preceding the hearing, she began experiencing daytime seizures at least once a month and more at night, sometimes one or two per month and sometimes more.  (Tr. 48.)  She can tell when she has had a nighttime seizure because she wakes to find she has bitten her tongue or wet the bed and she is stiff and sore.  (Tr. 48.)  She experiences warning symptoms before daytime seizures and will be sore for a couple of days afterward.  (Tr. 48-49.)  She also experiences migraines two to three times per week.  (Tr. 49.)  Plaintiff testified her muscles

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -2

1  hurt from her hips down and in her arms.  (Tr. 49.)

2  **STANDARD OF REVIEW**

3      Congress has provided a limited scope of judicial review of a
4  Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the
5  Commissioner's decision, made through an ALJ, when the determination
6  is not based on legal error and is supported by substantial evidence.
7  *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v.*
8  *Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's]
9  determination that a claimant is not disabled will be upheld if the
10 findings of fact are supported by substantial evidence." *Delgado v.*
11 *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).
12 Substantial evidence is more than a mere scintilla, *Sorenson v.*
13 *Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than
14 a preponderance.  *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th
15 Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846
16 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such
17 relevant evidence as a reasonable mind might accept as adequate to
18 support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401
19 (1971) (citations omitted).  "[S]uch inferences and conclusions as the
20 [Commissioner] may reasonably draw from the evidence" will also be
21 upheld.  *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965).  On
22 review, the court considers the record as a whole, not just the
23 evidence supporting the decision of the Commissioner.  *Weetman v.*
24 *Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*,
25 648 F.2d 525, 526 (9th Cir. 1980)).

26     It is the role of the trier of fact, not this court, to resolve
27 conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence
28 supports more than one rational interpretation, the court may not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual

functional capacity and age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 30, 2003, the alleged onset date.  (Tr. 15.)  At step two, he found Plaintiff has the following severe impairment: seizures.  (Tr. 15.)  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 16.)  The ALJ then determined:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She should not work around industrial vibrations, unprotected heights, or any dangerous work setting; she should not attempt work involving operation of a motor vehicle; she exhibits slight difficulties with concentration and persistence; and she cannot walk for extended distances or consistently for six hours in an eight-hour workday.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

(Tr. 17.)  At step four, the ALJ found Plaintiff is capable of performing past relevant work.  (Tr. 20.)  Thus, the ALJ concluded Plaintiff has not been under a disability as defined in the Social Security Act from June 30, 2003 through the date of the decision. (Tr. 20.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Specifically, Plaintiff argues the ALJ: (1) must consider records submitted to the Appeals Council in assessing the medical opinion evidence; (2) made an improper credibility analysis; and (3)failed to properly consider the lay witness statement.  (Ct. Rec. 14 at 8-14.)  Defendant argues (1) the ALJ properly found that Plaintiff's allegations regarding her limitations were not credible; (2) the ALJ properly considered the lay evidence; and (3) additional records submitted to the Appeals Council do not provide a basis for remand.  (Ct. Rec. 19 at 7-16.)

**DISCUSSION**

**1.   Evidence Submitted to the Appeals Council**

Plaintiff argues evidence submitted to the Appeals Council but not considered by the ALJ requires remand.  (Ct. Rec. 14 at 8-11.)  It is established in this circuit that any evidence which was submitted to the Appeals Council is part of the record for review.[1] *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (concluding the district court properly considered new evidence submitted to the Appeals

---

[1]There is a split among the circuits on this issue.  The Ninth Circuit follows majority rule.  *See Mills v. Apfel*, 244 F.3d 1, 4 (1st Cir. 2001) (discussing circuit split).

Council because the Appeals Council addressed those materials in denying review); *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (noting district court reviewed all materials including evidence not before the ALJ when Appeals Council declined to accept review). Thus, this court properly considers evidence first submitted to the Appeals council in reviewing the ALJ's decision.   The question is whether the ALJ's decision is supported by substantial evidence after taking into account the new evidence.

The Appeals Council received five pieces of evidence which it made part of the record: (1) records from Dr. Lum dated August 24, 2006, to January 2, 2007; (2) records from Dr. Kubitz dated November 22, 2006, through May 2, 2008; (3) records from Providence Hospital dated August 24, 2006, through May 2, 2008; records from Dr. Robinson dated June 3, 2008; and records from Wilbur Medical Clinic dated September 28, 2008, through February 24, 2009.  (Tr. 4.)[2]  Plaintiff

---

[2]The Appeals Council's identification of the additional records submitted is confusing when compared to the records themselves and Plaintiff's letters submitting the records.  (Tr. 4, 22, 314.)  It appears Plaintiff actually submitted records from Longview Clinic dated August 24, 2006, through January 4, 2007, including evidence from Dr. Lum and Dr. Kubitz (Tr. 315-35); records from Elena Robinson, M.D., dated May 16, 2008, through June 3, 2008 (Tr. 336-39); records from Wilbur Medical Clinic dated September 28, 2008, through January 2, 2009, (Tr. 340-47); and records from Wilbur Medical Clinic dated February 2, 2009, through February 24, 2009. (Tr. 23-29.)  There appears to be no records from Providence Hospital and Plaintiff does not assert a deficiency in the record or reference such records.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

1   argues the records indicate that she was not able to engage in full-

2   time employment due to her level of functioning. (Ct. Rec. 14 at 11.)

3       Dr. Lum saw Plaintiff four times between August 24, 2006, and

4   January 2, 2007. (Tr. 280-81, 31-24.) Notes from the first visit on

5   August 24, 2006, indicate Plaintiff had been seizure-free for five or

6   six months, and her last seizure was likely secondary to running out

7   of medication. (Tr. 280.) Dr. Lum ordered blood tests to check

8   Plaintiff's Tegretol level and other baseline levels and made a

9   gynecology referral. (Tr. 280.) At her second visit on September 14,

10  2006, Dr. Lum reviewed the results of blood tests, which included

11  findings that Tegretol was at a therapeutic level and Plaintiff had

12  high cholesterol. (Tr. 281.) Plaintiff denied any fever, chills,

13  nausea, or vomiting and denied seizure activity. (Tr. 281.) On

14  November 10, 2006, Plaintiff visited Dr. Lum for completion of DSHS

15  paperwork. (Tr. 319.) Plaintiff reported a possible seizure episode

16  while sleeping. (Tr. 319.) Dr. Lum noted that Plaintiff reported

17  being unable to get a job secondary to her seizure problems, although

18  she denied any evidence of seizing in the daytime. (Tr. 319.) Dr.

19  Lum referred Plaintiff to a neurologist and stated, "At this point, I

20  have minimal input to see if the [patient] will be permanently

21  disabled or not until she is evaluated by neurology, but I do agree

22  that if the [patient] is having active seizure activity, she should

23  cont[inue] disability until being evaluated by neurology." (Tr. 319.)

24      The last office visit notes from Dr. Lum are dated January 2,

25  2007, and a DSHS Physical Evaluation form was completed concurrently.

26  (Tr. 322-24.) Dr. Lum noted Plaintiff had recently seen Dr. Schostal

27  who had increased Plaintiff's Tegretol dosage. (Tr. 322.) Plaintiff

28  reported side effects of sedation since the increase. (Tr. 322.) Dr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

Lum advised Plaintiff to follow up with Dr. Schostal to get the medication adjusted. (Tr. 322.) Plaintiff denied any other concerns. (Tr. 322.) Dr. Lum agreed it would not be a good idea for Plaintiff to return to full time work until the evaluation by the neurologist was complete and medication was further adjusted. (Tr. 322.) Dr. Lum reported that Plaintiff also complained she had been unable to lift heavy objects, but he noted this had not been previously brought up. (Tr. 322.) He also told Plaintiff she would need another appointment to assess her lifting concerns before he could assess any limitations. He noted Plaintiff appeared to be unhappy throughout the discussion and assessment which was relatively unchanged from the previous visit. (Tr. 322.) On the DSHS evaluation form, Dr. Lum noted Plaintiff's ability to concentrate for extended periods of time was limited due to the side effect of some sedation. (Tr. 323.) Dr. Lum indicated that Plaintiff's ability to work is limited to 1-10 hours per week. (Tr. 323.) He specifically assessed no limits on lifting and carrying and indicated Plaintiff could do light work. (Tr. 323.) Dr. Lum also indicated that condition would likely limit the ability to work for months rather than assessing it as a permanent condition. (Tr. 324.)

        Plaintiff argues Dr. Lum's records "clearly indicate that Ms. Acheson was not functioning at a level where she was able to engage in any full-time employment based on Dr. Lum's report." (Ct. Rec. 14 at 11.) While Dr. Lum did note that Plaintiff would be limited to light work for 1-10 hours per week, it is not "clear" that Dr. Lum assessed functional limitations constituting a permanent disability. In fact, Dr. Lum declined to characterize Plaintiff's reported symptoms as a permanent disability, instead indicating that it was expected to last for only months. (Tr. 324.) The side effect of sedation from an

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

1  increase in Tegretol was a new development and was not mentioned
2  anywhere else in the record.  Notably, side effects from Tegretol such
3  as impaired concentration or sedation were not mentioned by Dr. Bell,
4  the neurologist who saw Plaintiff shortly thereafter in May 2007,
5  despite Dr. Lum's urging that Plaintiff consult with a neurologist
6  about her complaints.  (Tr. 297.)  Dr. Lum's records do make clear
7  that he wanted to defer an opinion as to permanent disability without
8  further input from a neurologist.  (Tr. 319, 323-24.)  Furthermore,
9  Dr. Lum's records support many of the ALJ's findings, including the
10  negative credibility finding.  Dr. Lum observed that Plaintiff
11  reported no daytime seizures for six months, yet stated she is unable
12  to work due to seizures, similar to the statement by psychiatrist Dr.
13  Michel noted by the ALJ in assessing Plaintiff's credibility.  (Tr.
14  250, 319.)  Plaintiff also told Dr. Lum her last seizure was due to
15  running out of medication.  (Tr. 315.)  This is consistent with the
16  ALJ's observations that no physician opined Plaintiff was disabled,
17  and that her seizure condition is relatively controllable and does not
18  detrimentally affect her general abilities.  (Tr. 19.)  Nothing in Dr.
19  Lum's records undermines the ALJ's findings or conclusions.  As a
20  result, even considering Dr. Lum's records, the ALJ's decision is
21  supported by substantial evidence.

22      Plaintiff also points to records from Dr. Robinson as evidence
23  undermining the ALJ's opinion.  (Ct. Rec. 14 at 11.)  Plaintiff saw
24  Dr. Robinson one time on May 16, 2008.  (Tr. 336-38.)  Dr. Robinson
25  noted plaintiff reported suffering from moderate to severe headaches
26  all her life.  (Tr. 336.)  Plaintiff had been taking daily anti-
27  inflammatory medications as needed.  (Tr. 336.)  Dr. Robinson noted no
28  seizures since an increase in anti-seizure medication.  (Tr. 336.)  Dr.

Robinson mentioned migrainous features to Plaintiff's headaches, advised against medication overuse for control of headaches, and recommended Lyrica and naturopathic supplements to help improve daily headaches. (Tr. 337-38.) On June 3, 2008, Dr. Robinson wrote a note "To Whom It May Concern" and stated that Plaintiff "despite treatment with medications, Ms. Acheson still experiences breakthrough seizures." (Tr. 339.) Dr. Robinson also wrote that when she has a seizure, she is very likely to miss her college classes "due to the disability of the seizure." (Tr. 339.)

Nothing in Dr. Robinson's office visit notes is suggestive of additional functional limitations or disability due to seizure disorder. Plaintiff's seizures are superficially addressed by Dr. Robinson in noting history of seizure and no recent occurrences. (Tr. 336.) Much of the note from Dr. Robinson is focused on headache control. (Tr. 336-38.) The letter "To Whom It May Concern" mentions breakthrough seizures which are so disabling as to prevent Plaintiff from attending college classes. (Tr. 339.) There is no evidence supporting this in Dr. Robinson's office visit note, and the ALJ's discussion of the medical evidence is not affected or undermined by Dr. Robinson's unsubstantiated and unspecific note written to excuse Plaintiff from college classes.

Plaintiff does not argue any other records submitted to the Appeals Council but not considered by the ALJ justify remand. The records from Dr. Kubitz (Tr. 317, 325) and Wilbur Medical Clinic (Tr. 23-29, 340-48) do not undermine the ALJ's findings and conclusions. The court concludes that the ALJ's decision is supported by substantial evidence after taking into account all the records submitted to the Appeals Council. As a result, remand is not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

justified on the basis of the additional records.

Lastly, it is noted Plaintiff also appears to argue that the ALJ improperly relied on the testimony of the medical expert, Dr. Rullman, who testified at the hearing. (Ct. Rec. 14 at 8-9.) Plaintiff's argument is unclear, since the ALJ noted that accepted medical source opinions were generally consistent and gave significant weight to those opinions. (Tr. 19; Ct. Rec. 14 at 9.) The ALJ also gave great weight to the expert medical testimony of Dr. Rullman. (Tr. 19.) The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Plaintiff does not explain how the ALJ erred in relying on Dr. Rullman's opinion, or specifically address any evidence cited by the ALJ as consistent with and supporting Dr. Rullman's opinion. (Tr. 15-20.) Plaintiff's argument seems to suggest that Dr. Rullman's opinion contradicts evidence from Dr. Lum and Dr. Robinson, but as discussed *supra*, the evidence submitted to the Appeals Council and not reviewed by the ALJ does not undermine the ALJ's reliance on Dr. Rullman's testimony or the ALJ's other conclusions and findings.

**2.   Credibility**

Plaintiff argues the ALJ did not adequately consider her testimony. (Ct. Rec. 14 at 12-13.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. §

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines

the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with the RFC assessment. (Tr. 18.) Plaintiff argues that the ALJ "failed to set forth reasons why Ms. Acheson's testimony regarding the frequencies of her seizures was not credible and what facts in the record led to that conclusion." (Ct. Rec. 14 at 12-13.) However, the ALJ listed a number of factors undermining Plaintiff's credibility and cited numerous points in the record supporting his reasoning.

First, the ALJ concluded the objective medical evidence does not support the level of limitations claimed. (Tr. 18.) While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). The ALJ observed that Dr. Michels, a psychiatrist, summarized the conclusions that can be drawn from the medical evidence by stating, "Although she has not had any seizures in the daytime since [May 2005], she explains that the reason she is not working now is solely because of the seizures." (Tr. 250.) Notably, Plaintiff attributed the May 2005 daytime seizure to low Tegretol levels. (Tr. 250.).

Second, the ALJ pointed out that no medical source has opined that Plaintiff cannot work. (Tr. 18.) The ALJ may consider the fact

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

that no treating or examining physician has found a claimant disabled. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  The ALJ also observed that the most significant limitation noted by any physician is that Plaintiff should not drive until she is seizure-free for six months.  (Tr. 18, 214, 253.)  These factors are inconsistent with Plaintiff's claim that she cannot work and, therefore, undermine her credibility.

Third, the ALJ noted that daytime seizures experienced by Plaintiff appear to be due to a lack of medication.  (Tr. 18.) Credibility is undermined by unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, see, e.g., 20 C.F.R. § 404.1530(c) (1988); *Gallant*, 753 F.2d at 1455, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.  *Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989).  In March 2005, Plaintiff visited the emergency room after a single isolated seizure and informed an emergency room physician that she had recently missed three days of her anti-seizure medication.[3] (Tr. 219.)  In May 2005, Plaintiff's Tegretol level was

_____

[3]The ALJ erroneously indicated Plaintiff saw Dr. Schneider in the emergency room in March 2008 rather than March 2005.  (Tr. 18, 219.) This is a harmless error because it is inconsequential to the ultimate outcome.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT –16

low after she had her first daytime seizure at work.[4]  (Tr. 214.)
These facts were properly considered by the evidence and lead to a
reasonable conclusion that at least some of Plaintiff's seizures are
caused by medication noncompliance.

Next, the ALJ noted other inconsistencies in Plaintiff's reports
of symptoms.  (Tr. 18.)  In making a credibility evaluation, the ALJ
may rely on ordinary techniques of credibility evaluation.  *Smolen v.
Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ noted that
although Plaintiff reported in December 2006 that she had experienced
headaches for years, she denied having headaches in May 2005 and did
not mention headaches to Dr. Michels in July 2006.  (Tr. 213, 249-53,
290.) Similarly, Plaintiff reported to Dr. Robinson in May 2008 that
she had moderate to severe headaches "for many years" and "all my
life" (Tr. 336), but denied any complaints other than seizures to Dr.
Lum in January 2007.[5]

The ALJ observed that Plaintiff also testified she experiences
body pain in her arms and legs, yet no medical record indicates she
complained of this pain to medical sources.  (Tr. 19, 49-50.)  It is
noted that in a February 2009 record not available to the ALJ,
Plaintiff complained to Dr. St. Clair that she had muscle pain and
weakness in her arms and legs in a persistent pattern for over two
years.  (Tr. 23.)  Dr. St. Clair also noted that Plaintiff reported
muscle weakness as occurring between the ages of 20 and 40.   (Tr.

---

[4]Plaintiff testified the May 2005 seizure was the first daytime
seizure she had ever had.  (Tr. 47.)

[5]The records of Dr. Lum and Dr. Robinson were not available to the
ALJ.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -17

23.)  While this record was not available to the ALJ, it does not undermine the ALJ's credibility finding.   To the contrary, it is similar to the headache evidence because it reflects Plaintiff's complaints that she has had symptoms for years, but those symptoms are not substantiated by the record.

The ALJ noted that Plaintiff was able to engage in substantial gainful activity from 1997 to 2003 despite her seizure condition. (Tr. 126.)  Plaintiff was reluctant to reveal to Dr. Michel that she had not sought treatment or evaluation of her seizure condition by a neurologist for more than 20 years, which the ALJ concluded detracted from her credibility.  (Tr. 249.)

The ALJ also considered whether Plaintiff's condition recently worsened.  (Tr. 19.)  He observed that in December 2006, Plaintiff reported that ibuprofen gave relief from headaches.  (Tr. 290.)  In April 2007, Plaintiff reported no further seizures since increasing Tegretol.  (Tr. 288.)  Dr. Bell, a neurologist, opined in July 2007 that some of Plaintiff's recurring seizures seemed to be caused by medication noncompliance.   (Tr. 295.)   He noted that Plaintiff complained Tegretol makes her very nauseated and she would not take the daytime dose when she had to go somewhere.  (Tr. 295.)  Under those conditions, Dr. Bell indicated she will have recurring seizures.[6] (Tr. 295.)  The ALJ concluded that overall, the evidence indicates that Plaintiff's seizures are controllable and do not detrimentally affect her general abilities.  (Tr. 19.)  The ALJ noted evidence that Plaintiff enjoys life, has no trouble falling or staying asleep, and

---

[6]There is no other mention of nausea due to Tegretol in the record.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -18

1   denied symptoms other than her seizures.  (Tr. 250.)  Plaintiff has no

2   psychological limitations.   (Tr. 253.)   The reviewing physician and

3   medical expert both opined that Plaintiff has no exertional

4   limitations.  (Tr. 41-42, 287.)  The ALJ properly considered all of

5   this evidence and reasonably interpreted it.

6         The ALJ cited many factors justifying the negative credibility

7   finding and those factors constitute clear and convincing reasons

8   supported by substantial evidence.   Plaintiff's argument fails to

9   address the specific reasons mentioned by the ALJ as the basis for the

10  credibility finding.   The ALJ's interpretation of the evidence was

11  reasonable and his conclusions are supported by the evidence.  As a

12  result, the ALJ did not err.

13  **3.   Lay Witness**

14        Plaintiff argues the ALJ failed to properly consider the

15  statement of James Dawson.  (Ct. Rec. 14 at 13-14.)  Mr. Dawson,

16  Plaintiff's former live-in companion, completed a DSHS Seizures

17  Questionnaire form in June 2006.  (Tr. 168-69.)  He wrote that he had

18  witnessed "hundreds" of Plaintiff's seizures.   He indicated that

19  Plaintiff has them both during the day and at night and described some

20  symptoms and effects.  (Tr. 168-69.)

21        An ALJ must consider the testimony of lay witnesses in

22  determining whether a claimant is disabled.  *Stout v. Commissioner of*

23  *Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006).   Lay witness

24  testimony regarding a claimant's symptoms or how an impairment affects

25  ability to work is competent evidence and must be considered by the

26  ALJ.  If lay testimony is rejected, the ALJ "'must give reasons that

27  are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467

28  (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -19

1  1993)).

2  The ALJ considered Mr. Dawson's statement, noting that Mr. Dawson

3  reported Plaintiff's seizures occur "mostly when sleeping." (Tr. 17,

4  168.)  The ALJ gave less weight to Mr. Dawson's statement because it

5  is not consistent with the objective medical evidence. (Tr. 20.)  An

6  ALJ may discount lay testimony if it conflicts with medical evidence.

7  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v.*

8  *Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). As outlined in the ALJ's

9  credibility findings, the medical evidence shows that despite

10 Plaintiff's seizure disorder, her activities and abilities are not

11 particularly impaired.  Furthermore, the evidence suggests that

12 Plaintiff's daytime seizures can be controlled by medication.

13 Plaintiff argues Mr. Dawson's statement that Plaintiff

14 experiences side effects from Tegretol of weight gain and being tired

15 all day is supported by evidence from Dr. Lum, which was not before

16 the ALJ.  (Ct. Rec. 14 at 14.)  Plaintiff did not complain of

17 tiredness or sedation in her first two visits to Dr. Lum. (Tr. 280-

18 81.) In January 2007, during a visit to complete a DSHS Physical

19 Evaluation form, Dr. Lum noted Plaintiff reported having some side

20 effects of sedation after Dr. Schostal, a neurologist, increased her

21 dosage of Tegretol. (Tr. 322.)  Dr. Lum recommended that Plaintiff

22 return to Dr. Schostal for medication management.  (Tr. 322.)  Dr.

23 Lum's records do not support the statement that Plaintiff is tired all

24 day.  The sedation is based on Plaintiff's self-report, which was

25 properly determined by the ALJ to be unreliable.  Additionally, Dr.

26 Lum's note reflects that the sedation effect was a recent side effect

27 due to change in medication, and does not support the level of

28 tiredness suggested by Mr. Dawson's statement.  As a result, even

considering the records from Dr. Lum, the ALJ's rejection of Mr.
Dawson's statement is supported by a reason germane to the witness and
substantial evidence.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court
concludes the ALJ's decision is supported by substantial evidence and
is not based on error.   Accordingly,

**IT IS ORDERED:**

1.   Defendant's Motion for Summary Judgment **(Ct. Rec. 18)** is
**GRANTED.**

2.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is
**DENIED.**

The District Court Executive is directed to file this Order and
provide a copy to counsel for Plaintiff and Defendant.   Judgment shall
be entered for Defendant and the file shall be **CLOSED.**

DATED March 11, 2011.


                    S/ CYNTHIA IMBROGNO
             UNITED STATES MAGISTRATE JUDGE